IN THE 24TH JUDICIAL CIRCUIT COURT OF WASHINGTON COUNTY
STATE OF MISSOURI

Michael Dutcher,
                    Petitioner,

                                        Case No. 24WA-CC00014

v.

Trevor Foley,                           PETITION FOR
DeAnna Duff,                            WRIT OF MANDAMUS
Chrystal Schmitz,
David Vandergriff,
                    Respondents.

FILED
O'clock ___ Minutes ___ M.
FEB 26 2024
By Ashley Gum

## I. NATURE OF CASE

1. Now comes Petitioner Michael Dutcher petitioning for a writ of mandamus under Missouri Supreme Court Rule 94 to inquire into the unlawful administrative segregation stay in the Missouri Department of Corrections and Corrections officials failure to adhere to petitioner's Interstate Compact terms, rights and statutes, thus denying petitioner due process under state law and violating his rights under the fourteenth Amendment to the United States Constitution.

## II. PARTIES

2. Petitioner:
Petitioner Michael Dutcher (Dutcher) -pro se- is and was at all times mentioned herein a prisoner of the State of Missouri in the Department

1 of 14

of Corrections. Dutcher is a citizen of the United States and at all times relevant herein, Dutcher was a prisoner at the Potosi Correctional Center in Mineral Point, MO, where the alleged violations occured, unless otherwise noted.

4. Respondents:

a. Respondent Trevor Foley (Foley) is the acting director of the Missouri Department of Corrections. He is legally responsible for the overall operation of the Department including all of the adult institutions in the State of Missouri, including Potosi Correctional Center. Foley is responsible for the agreement to house any and all interstate compact prisoners within the Department.

b. Respondent DeAnna Duff (Duff) is an Interstate Compact Coordinator at the Missouri Department of Corrections Central Transfer Authority office. At all times relevant herein, Duff was and is Dutcher's [ICC] Coordinator. She is legally responsible for ensuring the safety and well-being of Dutcher as well as for ensuring the terms and statutes of the Interstate Compact are adhered to by prison officials. Duff is Dutcher's liaison to the State of Iowa Department of Corrections.

c. Respondent Chrystal Schmitz (Schmitz) is the Director of Central Transfer Authority. At all times relevant herein, Schmitz held the title of Director of the [CTA]. Schmitz is legally responsible for overseeing the housing, safety and well-being of all interstate compact inmates being housed within the Missouri Department of Corrections. Schmitz is directly responsible for ensuring the appropriate professional conduct of the subordinates in her office.

d. Respondent David Vandergriff (Vandergriff), at all times relevant herein, was and is the Chief Administrative Officer (CAO or warden) of Potosi Correctional Center. He is legally responsible for the operation of the prison, the conduct of prison officials at the prison, and the welfare of all of the inmates and staff at the prison.

e. Address:
Trevor Foley's address is Trevor Foley, Acting Director, Office of the Director, MDOC, 2729 Plaza Drive, P.O. Box 236, Jefferson City, MO 65102.

DeAnna Duff's address is DeAnna Duff, ICC Coordinator, Central Transfer Authority, MDOC, 2729 Plaza Drive, P.O. Box 236, Jefferson City, MO, 65102.

Chrystal Schmitz's address is Chrystal Schmitz, Director, Central Transfer Authority, MDOC, 2729 Plaza Drive, P.O. Box 236, Jefferson City, MO 65102.

David Vandergriff's address is David Vandergriff, Warden, Potosi Correctional Center, 11593 State Hwy O, Mineral Point, MO 63660.

## III. STATEMENT OF FACTS

5. At all times relevant to this petition, Dutcher remained confined in administrative segregation (adseg) in Potosi Correctional Center (PCC) unless otherwise stated herein.

6. On September 15, 2021, Dutcher was transferred from the Iowa Department of Corrections (IDOC) to the MDOC, where he was initially incarcerated at

the Jefferson City Correctional Center (JCCC).

7. This state to state transfer was executed under the states' Interstate Compact Agreement (Compact) that they have with each other and other states.

8. This interstate transfer was initiated by a plea agreement entered between Dutcher and the State of Iowa.

9. This ICC Agreement was ~~was~~ MD reviewed by, and signed by the former MDOC Director and the current IDOC Director.

10. Dutcher was not transferred to the MDOC for any wrong-doing in Missouri. Dutcher violated no Missouri laws nor committed any infractions within the MDOC prior to his transfer.

11. When a state enters into an agreement with another state under an ICC, that state agrees to adhere to all terms, rights and stipulations, as well as privileges set forth in the agreement and accompanying statute(s).

12. In an ICC Agreement, the receiving state is to act solely as an agent for the sending state.

13. The MDOC received no court order nor any other form of order that is documented, from the IDOC directing the MDOC and its employees to penalize or further punish Dutcher for acts committed outside the jurisdiction of Missouri. The MDOC has no jurisdiction to punish Dutcher for acts committed in the State of Iowa.

14. On September 15, 2021, when Dutcher arrived at JCCC, he was immediately assigned to adseg, which is where he remained until September 7, 2022, which is when Dutcher was transferred to PCC.

15. Iowa did not give final approval to JCCC Classification committee's recommendations to initially adseg Dutcher or continue to adseg Dutcher at each of his subsequent Classification hearings at JCCC. Approval was given by JCCC prison officials.

16. Upon transferring to PCC on September 7, 2022, Dutcher was again immediately assigned to adseg.

17. Dutcher was never informed of the charges against him that were warranting his continued adseg assignment throughout his incarceration at JCCC or PCC.

18. At Dutcher's initial PCC Classification hearing held on September 7, 2022, the committee recommended Dutcher be assigned to adseg. When Dutcher asked why, he was told by former Functioning Unit Manager Brian Davis, a committee member, "After what you did in Iowa, we want to monitor your behavior and see how you're going to act."

19. Dutcher was then given 30 days in adseg. Iowa did not approve the committee's adseg recommendation.

20. Dutcher was then assigned to the restrictive housing unit, in Housing Unit 1 (HU1), on A-wing. Approximately one week later, Dutcher was informed by his case manager at that time that he was to complete the prison's Potosi Reintegration Unit (PRU) program before he would be considered for release

from adseg. This is a one-year minimum program.

21. This PRU program is intended for single-cell mandated inmates who commit serious conduct violations (CDVs) or crimes within the MDOC. As Dutcher committed no serious CDV or crime in the MDOC and he is not a single-cell mandate inmate, he clearly did not qualify for this program and should not have been required to complete it before he would be released from adseg.

22. While on A-wing, Dutcher spoke with respondent Vandergriff and other administrators and inquired as to why he was being denied the opportunity to transition to general population and being forced to complete the PRU program. Vandergriff and the other administrators to include deputy warden Daniel Francis and Assistant warden Jennifer Currie informed Dutcher that due to the nature of the crimes he committed in Iowa, he was being punished and was to complete the PRU program if he ever wanted to be released from adseg.

23. At Dutcher's next Classification hearing held on October 4, 2022, Dutcher again inquired as to why he was still assigned to adseg. Dutcher was told by Davis, "Because of what you did in Iowa, and your [IDOC] conduct violations." Dutcher informed the committee that they could not legally punish him for crimes he committed in Iowa. Davis replied, "Yes, I can."

24. Dutcher was then given 30 additional days in adseg. Iowa did not approve the committee's adseg recommendation.

25. At Dutcher's next Classification hearing held on November 1, 2022, Dutcher asked the committee why he had never been recommended for or approved

for a twelve-month adseg extension, even though, as of September 16, 2022, he had been assigned to adseg for twelve consecutive months in the MDOC. Dutcher informed the committee that this extension is required per MDOC institutional policy, if an inmate is to continue adseg confinement beyond twelve consecutive months.

26. Dutcher was told by Davis that his adseg extension had been "overlooked."

27. Dutcher was then given 30 additional days in adseg. Iowa did not approve the committee's adseg recommendation.

28. In or about Mid-October of 2022, Dutcher had inquired with his case manager as to why he was being confined to adseg beyond twelve consecutive months without an approved adseg extension, the case manager told Dutcher the issue would be rectified immediately. The committee members at Dutcher's hearing on November 1, 2022 said this as well when Dutcher asked them the same question.

29. An adseg extension was not recommended by Respondent Vandergriff until November 25, 2022 and it was not approved until November 28, 2022.

30. Iowa did not approve this twelve-month adseg extension, rather, the MDOC deputy division director of the Division of Adult Institutions Jason Lewis approved it.

31. At Dutcher's next Classification hearing held on December 7, 2022, Dutcher asked the committee why he was being denied the opportunity to transition to general population, why he was being falsely imprisoned, and why he was being subject to excessive adseg confinement. The committee told Dutcher it was

due to his "Iowa Conduct history." Dutcher told the committee that he had already been punished for any violations of laws in Iowa by an Iowa court and that PCC and the MDOC had no justifiable cause or jurisdiction to further punish him.

32. The committee told Dutcher that they could and would still punish him anyway. Dutcher informed the committee of the terms and rights of his ICC Agreement and that per said compact, they were not justified in confining him to adseg. Davis told Dutcher, "I don't care - I'm going to keep you in adseg anyway." Dutcher asked Davis if he would put that statement in writing. Davis replied, "No, you're not going to get me in ~~trouble~~ trouble."

33. Dutcher was then given 90 additional days in adseg. Iowa did not approve the committee's adseg recommendation.

34. At Dutcher's next Classification hearing held on February 28, 2023, Dutcher had been feeling ill and was utilizing the restroom in his cell. While using the restroom, prison guards came to Dutcher's cell to escort him to the hearing. Dutcher requested a couple of minutes to finish using the restroom and wash his hands. The guards left to inform the committee that Dutcher was using the restroom. A guard then returned to inform Dutcher that per Davis, by Dutcher using the restroom, Dutcher had "refused to participate" in the hearing, which Dutcher had not. Thus, Dutcher was denied his right to attend the hearing and be heard.

35. Dutcher was then given an additional 90 days in adseg. Iowa did not approve the committee's adseg recommendation.

36. At Dutcher's next classification hearing held on May 23, 2023, Dutcher asked why he was still being unlawfully kept in adseg, when he would be allowed to transition to general population, and what his treatment plan was.

37. The committee informed Dutcher that he had no set treatment plan, he could possibly return to the PRU program in 90 days, and as for why he was still in adseg, committee member Samantha Kelley told Dutcher, "Obviously because management wants you there."

38. Dutcher was then given an additional 90 days in adseg. Iowa did not approve the committee's adseg recommendation.

39. At Dutcher's next classification hearing held on August 15, 2023, Dutcher asked the committee why he was still in adseg and when he would be released. Davis told Dutcher, "You're in adseg because that's where I want you. Because of what you did in Iowa, I have absolutely no intentions of ever letting you out of adseg."

40. Dutcher was then given an additional 90 days in adseg. Iowa did not approve the committee's adseg recommendation.

41. At Dutcher's next classification hearing held on November 7, 2023, Dutcher told the committee that in the previous ten months, he had only received two minor CDVs, that he had completed a 13-week in-cell program, and that he had been in adseg in MDOC for over two years.

42. The committee told Dutcher he would remain in adseg anyway "because of your past." Dutcher attempted to explain that he had been one of the best-

behaved inmates in adseg and asked what his past had to do with his present conduct, Samantha Kelley told Dutcher, "None of that matters. You killed people, people just like us. You should try and get used to the fact that you're probably not leaving adseg for an extremely long time."

43. Dutcher was then given 90 additional days in adseg. Iowa did not approve the committee's adseg recommendation.

44. On November 14, 2023, Dutcher was again approved for a twelve-month adseg extension. Iowa did not approve this adseg extension, rather, the MDOC deputy division director of the Division of Adult Institutions Jason Lewis approved it.

45. At Dutcher's next hearing held on January 30, 2024, Dutcher asked the committee what the plan was for him and requested to be released from adseg. Dutcher was told by committee member Kelley that the plan was to keep Dutcher in adseg for as long as possible and that they had no intentions of letting Dutcher out of adseg.

46. Dutcher was then given 90 additional days in adseg. Iowa did not approve the committee's adseg recommendation.

47. Each time Dutcher spoke with his case manager inquiring into when he would be released from adseg, Dutcher was told that he was serving adseg indefinitely due to "what you did in Iowa."

48. Dutcher wrote numerous letters to Respondents Foley, Duff, Schmitz and Vandergriff as well as numerous other MDOC personnel regarding his indefinite adseg confinement, violations to his ICC Agreement by

prison officials, being released to an adseg plan or to general population, etc. Duff and Schmitz responded informing Dutcher that there was nothing they could or would do about these issues and that they could not and would not interfere with what prison staff do to him.

49. Dutcher filed institutional grievances seeking redress of the violations to his ICC Agreement, his being falsely imprisoned, his indefinite adseg confinement, and his being discriminated against by prison officials, for crimes he was convicted of in another state. All of these grievances were denied.

50. While he has been incarcerated in the MDOC, Dutcher has not been governed by Iowa's laws and administrative rules. Prison officials refuse to adhere to this Section of the Compact.

51. Dutcher has been subject to types of discipline prohibited by Iowa, such as being assigned to adseg as a means of punishment.

52. Dutcher has not been treated equally as with all other MDOC inmates, or inmates in PCC. Dutcher has been on a Special Security Order, continuous in nature, since January 6, 2023 for a simple minor conduct violation. Dutcher was removed from Housing Unit two and placed in Housing Unit One, the high restrictive unit, after receiving a minor CDV. Housing Unit One is intended for inmates who commit major CDVs or crimes in the MDOC such as murder, escape, staff assaults, attempted murder, etc.

53. Dutcher has had all of his disciplinary and classification hearings

result in recommendations that were not approved by Iowa. Prison officials refuse to adhere to the Compact Statute that stipulates that any hearing of the inmate held in the receiving state shall have all recommendations sent to the sending state for final approval.

54. Dutcher has been told by numerous prison officials that he was being indefinitely confined to adseg due to the crimes he committed in Iowa.

55. Numerous prison officials have written "character references" on Dutcher's behalf, stating that they firmly believe he should be released from adseg.

56. The illegal actions described herein are causing Dutcher mental and emotional pain and suffering as well as injury to his due process rights under the Fourteenth Amendment to the United States Constitution and Missouri Constitution Article I Section 10.

57. Dutcher has no plain, adequate, or complete remedy at law to redress the wrong-doings described herein. Dutcher has been and will continue to be irreparably injured by the conduct of the respondents unless this courts grants mandamus and the relief requested.

## IV. RELIEF SOUGHT

WHEREFORE, Petitioner respectfully prays that this court enter judgment:

A. Issuing and granting Petitioner a declaration that the acts and omissions described herein violate his rights under the U.S. Constitution, the Missouri Constitution, and state statute.

B. Require the respondents, their agents, successors and employers to apply Iowa laws and administrative rules to petitioner while he is housed in the MDOC.

C. Require the respondents, their agents, successors and employers to apply Iowa regulations to petitioner's disciplinary and classification hearings.

D. Prohibit the respondents, their agents, successors and employers from rendering final decisions in petitioner's disciplinary and classification hearings and have all hearing decisions or recommendations forwarded to Iowa for approval.

E. Order the respondents to release the petitioner from administrative segregation in its entirety and see to it that any future administrative segregation of petitioner is in accordance with the laws, rules and regulations of Iowa and the Iowa Department of Corrections.

F. Require the respondents, their agents, successors and employers to provide petitioner a means of which he can regularly access IDOC policies and procedures at no cost to petitioner.

G. Require the respondents, their agents, successors and employers to implement the process and allow the petitioner to purchase canteen or commissary items from the Iowa Prison Industries/IDOC and IDOC-approved mail-order vendors.

H. Petitioner also seeks recovery of costs in this suit, and

Any additional relief this court deems just, proper, and equitable.

Dated: January 30, 2024

Respectfully Submitted,
/s/ Michael Dutcher
Michael Dutcher
1866991
Potosi Correctional Center
11593 State Hwy O
Mineral Point, MO 63660

VERIFICATION

I have read the foregoing writ and hereby verify that the matters alleged therein are true. I certify under penalty of perjury that the foregoing is true and correct.

Michael Dutcher